IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br>Plaintiff,<br>v.<br>ELKS CONSTRUCTION, INC., et al.,<br>Defendants. | Case No. 23-cv-03645-MMC<br><br>**ORDER GRANTING DEFENDANT SALTALK, INC.'S MOTION TO STAY**<br>Re: Dkt. No. 18 |

Before the Court is Defendant Saltalk, Inc.'s ("Saltalk") "Motion to Stay," filed September 7, 2023. On September 21, 2023, plaintiff Houston Casualty Company ("Houston") filed opposition, to which Saltalk, on September 28, 2023, replied. Having read and considered the papers filed in support of an in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

On January 28, 2020, Saltalk, a Delaware corporation, and Elk's Construction, Inc. ("ECI"), a California corporation, entered a contract under which ECI was to renovate business space leased by Saltalk. (Compl. ¶¶ 4–6.) Work on the project began in February 2020 (see Def.'s Request for Judicial Notice, Dkt. No. 18-3, Ex. 1 ("Underlying Compl.") ¶ 7).[2] "On August 20, 2021, Saltalk filed a complaint in the Santa Clara County Superior Court, Saltalk, Inc. v. Elk's Construction, Inc., Case No. 21CV387578," alleging

---

[1] By Order filed October 24, 2023, the Court took the matter under submission.

[2] Saltalk's and Houston's respective undisputed requests for judicial notice are hereby GRANTED.

1  delays and defective work. (Compl. ¶ 10.)

2      At the above-referenced times, ECI was insured by Houston, a Texas corporation, under two contracts (collectively, "the Policies"). The first policy, for which ECI applied on July 31, 2019, was effective from August 15, 2019, to August 15, 2020. (Compl. ¶ 19; id. Ex. 3.) The second policy, for which ECI applied on August 5, 2020, was effective from August 15, 2020, to August 15, 2021. (Compl. ¶ 19; id. Ex. 4.) The Policies cover "'those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which [the] insurance applies'" and require Houston to "'defend [ECI] against any "suit" seeking those damages.'"[3] (Compl. ¶ 20.) The policies do not cover property damage to "'[t]hat particular part of real property on which [the insured is] performing operations, if the "property damage" arises out of those operations,'" or "'property that has not been physically injured arising out of … [a] delay or failure by [the insured] … to perform a contract in accordance with its terms.'" (Compl. ¶ 21.) The policies also exclude coverage for any liability resulting from "'any … work performed upon any roof'" or property damage caused by "fungi, bacteria, or mold." (Compl. ¶¶ 23–24.)

    Saltalk notified Houston of the Underlying Action in November 2021, and Houston began defending ECI in the suit shortly thereafter. (Compl. ¶ 16). The Underlying Action is ongoing and is currently scheduled for a Trial Setting Conference on November 14, 2023. (Decl. of Aldo E. Ibarra in Supp. of Def.'s Mot. to Stay Action ("Ibarra Decl.") ¶ 6.)

    On July 24, 2023, Houston filed the instant action against ECI and Saltalk, asserting three state law claims, by which it seeks, respectively, recission of the Policies based on false statements allegedly made by ECI, declaratory judgment stating that the Policies do not obligate Houston to defend or indemnify ECI in the Underlying Action, and reimbursement for the defense costs it has thus far incurred. (Compl. ¶¶ 25–44.)

//

---

[3] The Complaint quotes the policy language but neither policy is attached thereto.

2

**DISCUSSION**

By the instant motion, Saltalk seeks an order staying the instant case until the Underlying Action is resolved.[4]

**A. Legal Standard**

As explained by the Supreme Court in Landis v. N. Am. Co., 299 U.S. 248 (1936), "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort." Id. at 254. In determining whether to grant a stay, district courts weigh the following "competing interests," often referred to as the "Landis factors": (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law." See CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254–55); see also Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (applying federal procedural law in diversity actions) and United Specialty Ins. Co. v. Bani Auto Group, Inc., No. 18-cv-1649-BLF, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018) (applying federal law in considering propriety of stay; finding "a stay of an action is procedural, not substantive").

Additionally, in applying the above-listed factors, courts often consider the guidance provided by the California Supreme Court in Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287 (1993), which held that insurance coverage actions should be stayed when "the coverage question turns on facts to be litigated in the underlying action." See, e.g. United Specialty, 2018 WL 5291992, at *4 (finding "California law can help inform the Court's application of the Landis factors"). The Court thus will apply federal law to the instant motion, informed where relevant by Montrose.

//

---

[4] ECI has not appeared in this action. According to Saltalk, Kyle Kwong, ECI's principal, is "suffering from Long-COVID, ha[s] health complications and difficulty breathing, and could not actively participate in litigation." (Ibarra Decl. ¶ 7.)

3

### B. Landis Factors

The Court considers below each Landis factor in turn.

**1. Damage Resulting from Grant of Stay**

The Court first considers "the possible damage which may result from the granting of a stay." CMAX, 300 F.2d at 268.

Houston argues it will be prejudiced if the instant action is stayed because without "prompt adjudication of the coverage issues," it must defend the Underlying Action based on a "level of exposure" that it did not "seek[] to insure." (Pl.'s Opp'n. to Def.'s Mot. to Stay ("Pl.'s Opp'n") at 8:21–23,[5] Dkt. No. 24.) "[B]eing required to defend a suit, without more," however, "does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." See Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005); see also State Nat'l Ins. Co. v. US-SINO Inv., Inc., 5:13-cv-5240-EJD, 2015 WL 5590842, *5 (N.D. Cal. Sept. 23, 2015) (noting defending policyholders is "part of an insurer's obligation and cost of doing business").  Moreover, where, as here, the insurer seeks reimbursement of the costs incurred in defending the insured, the need for a stay is even less compelling. See, e.g. United Specialty, 2018 WL 5291992, at *5 (finding no prejudice where insurer could "be fully reimbursed for the funds it spen[t] in defending [the underlying action] should such reimbursement be warranted").

Accordingly, the Court finds the first factor weighs in favor of a stay.

**2. Hardship or Inequity Party May Suffer Absent Stay**

The Court next considers "the hardship or inequity which a party may suffer in being required to go forward". See CMAX, 300 F.2d at 268.

At the outset, Saltalk, citing Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183 (9th Cir. 2009) in support of its right to raise prejudice to the insured, argues ECI, in the absence of a stay, will be prejudiced by a need to take conflicting positions, such as

---

[5] In citing to page numbers in the parties' submissions, the Court has used herein the number at the bottom of the page.

arguing facts supporting liability in the Underlying Action to demonstrate coverage in the instant case. (See Def.'s Mot. to Stay ("Def.'s Mot.") at 8–10, Dkt. No. 18 and Def.'s Reply in Supp. of its Mot. to Stay ("Def.'s Reply") at 2, Dkt. No. 26.) Saltalk's reliance on Westchester Fire is, however, misplaced. In Westchester Fire, the Ninth Circuit held that, when the insured defaults in an insurer's declaratory relief action, an injured party nonetheless has standing to "defend against [a] declaratory judgment … in its own right." Id. at 1189-90. It did not in any manner address a motion to stay, let alone the injured party's right to raise potential prejudice to the insured in defending the action.

Saltalk next argues it will be prejudiced in the absence of a stay because the recission claim depends on information known only to Houston and ECI and to which Saltalk, as a practical matter, has no access. See Def.'s Mot. at 10 (stating ECI "cannot defend the case" due to its principal's illness).

Courts have found prejudice exists when the injured party is "forced to defend a federal insurance coverage dispute in which [it is] not the insured," see State National, 2015 WL 5590842, at *6, given that such plaintiffs-turned-defendants are "forced to reallocate resources from [the state] action to [the] federal action," where the issues have "little, if anything to do with [the injured party] at all," see United Specialty, 2018 WL 5291992, at *6. Moreover, where the factual issues in the underlying action and coverage action overlap, courts have found allowing the federal action to proceed "deprive[s] [injured parties] of the right to have factual issues adjudicated in their chosen forum," see State National, 2015 WL 5590842, at *5.

Here, to the extent Houston seeks recission based on misrepresentations unrelated to Saltalk's project, Saltalk's defense will be prejudiced by its lack of access to information relevant to the claim, and to the extent the claim is based on misrepresentations implicating ECI's work for it, Saltalk will be prejudiced by having facts relevant to the Underlying Action adjudicated outside its chosen forum.

Accordingly, the Court finds the second factor weighs in favor of a stay.

//

### 3. Orderly Course of Justice

Lastly, the Court considers "the orderly course of justice measured in terms of the simplifying or complication of issues, proof, and questions of law which could be expected to result from a stay." See CMAX, 300 F.2d at 268. "A stay promotes the orderly course of justice where the underlying proceedings are likely to decide or contribute to the issues before [the] court." See Clear Blue Specialty Co. v. Ozy Media, Inc., 5:21-cv-08764-EJD, 2023 WL 3046796, *16 (N.D. Cal. Apr. 20, 2023); see also United Specialty, 2018 WL 5291992, at *6 (collecting cases assessing factual overlap as part of third Landis factor).

    **a.**    **Recission Claim**

Houston argues the recission claim can be decided without reference to the facts at issue in the Underlying Action because "[n]o one can dispute the falsity of ECI'[s] representations" in its application for insurance. (Pl.'s Opp'n. at 5.) Upon examination, however, the grounds on which Houston seeks recission potentially overlap with facts at issue in the Underlying Action. Compare Compl. ¶ 28 (alleging ECI misstated its "knowledge of any facts or circumstances that might give rise to a claim or lawsuit") with Underlying Compl. ¶ 8 (alleging "[t]hroughout the Project Saltalk repeatedly requested that ECI correct its defective work"); Compl. ¶ 28 (alleging ECI misrepresented "whether [it] performed construction management services") with Underlying Compl. ¶ 13 (alleging Saltalk "was forced … to hire a construction manager" due to ECI's delays); Compl. ¶ 28 (alleging ECI misrepresented whether it "performed any waterproofing operations") with Underlying Compl. ¶ 15a (alleging ECI improperly installed a "water backflow preventer"); Compl. ¶ 28 (alleging ECI misrepresented its "work involving the connection of gas lines") with Underlying Compl. ¶ 10 (alleging ECI "gave incorrect information to PG&E regarding the … BTUs necessary for the electrical/gas service for the remodel").[6]

---

[6] Although Houston argues a statement, in ECI's 2020 application, that its gross receipts were $190,000, see Compl. ¶¶ 28, 30, Ex. 4, is false beyond dispute in light of Saltalk's allegation that it paid ECI $200,000 before the project commenced in early 2020, see Underlying Compl. ¶ 7, ECI's application does not specify the period as to

6

### b. Declaratory Judgment Claim

Houston also seeks a declaration that it need not defend or indemnify ECI in the Underlying Action because ECI's work for Saltalk does not constitute "property damage" covered by the policies. (See Compl. ¶ 39.) Houston's argument, however, artificially distinguishes the issues in the Underlying Action from the issues in its declaratory judgment action. Although the damage done to Saltalk's property and the scope of the insurance policies implicate separate inquiries, the same set of facts, namely, what work ECI did on Saltalk's property, will inform both, as will the basis for any jury finding of liability.

Accordingly, given the factual overlap between the Underlying Action and both of the above two claims, the Court finds the third factor weighs in favor of a stay.

## CONCLUSION

For the reasons stated above, Saltalk's Motion to Stay is hereby GRANTED and the instant action is hereby STAYED pending resolution of the Underlying Action.

The parties are directed to jointly notify the Court within two weeks of the conclusion of the Underlying Action.

**IT IS SO ORDERED.**

Dated: October 30, 2023

MAXINE M. CHESNEY
United States District Judge

---

which its gross receipts were being reported. Compl. Ex. 4.

7